This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                   **No. A-1-CA-35597**

**BENNY V. PORTER,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Angie K. Schneider, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe NM

for Appellant

## MEMORANDUM OPINION

**KIEHNE, Judge.**

{1}    After a jury trial, Benny Porter (Defendant) was convicted of one count of

shooting from a motor vehicle in violation of NMSA 1978, Section 30-3-8(B) (1993), and one count of aggravated assault with a deadly weapon in violation of NMSA 1978, Section 30-3-2(A) (1963). Defendant's sentence was enhanced as required by NMSA 1978, Section 31-18-16(A) (1993) because he used a firearm to commit the aggravated assault. On appeal, Defendant claims that his convictions for shooting from a motor vehicle and aggravated assault with a deadly weapon violate double jeopardy; that the firearm enhancement applied to his sentence for aggravated assault with a deadly weapon violates double jeopardy; that he should have been allowed to name a crime for which Jason Swapp (Victim) was convicted in support of his self-defense claim; that the district court improperly allowed a witness to testify about an incident in which Defendant rode as a passenger in a car through Victim's neighborhood one week before the shooting; and that the district court should have granted a mistrial after a juror revealed that she knew one of the State's witnesses. After consideration of Defendant's arguments, we affirm.

**BACKGROUND**

{2}     Defendant and Victim did not like each other. After Victim broke up with his girlfriend, Defendant dated her for one or two months before she resumed her relationship with Victim. On one occasion, Defendant and Victim had a physical altercation; while Victim said that the fight was mutual, Defendant claimed that

Victim was the aggressor, had "flat-out rushed [him]," and that Defendant "had . . . no choice but to defend [himself]."

{3} The present case involves an incident that occurred in May 2013 at the intersection of Lucky and Byrd streets in Alamogordo, New Mexico, when Defendant fired a gun at Victim from his car. Victim lived on Lucky Street, not far from the intersection. Defendant claimed and testified at trial that he fired the shot in self-defense because Victim ran toward Defendant with a baseball bat and threw a beer bottle at the car, causing Defendant to fear for his safety. Defendant said that he was blocked from driving away from the intersection because one of Victim's friends walked out into the street and stood in front of his car. Defendant asserted that he was only in the area to collect money owed to him by a friend who happened to live in the neighborhood. Defendant also testified that he bought the gun used in the shooting because, three weeks earlier, Victim had brandished a rifle while screaming at Defendant and a friend.

{4} The State's theory of the case was that Defendant was not acting in self-defense, but rather had escalated a pattern of harassing Victim. Victim testified that Defendant had driven slowly by his house while playing loud music around fifty times over the span of a few months and had driven by his previous residence about a dozen times. The State presented evidence that on the day of the offense, Victim approached

3

Defendant's car because he was tired of being harassed, and Victim was holding a beer bottle, not a bat. Victim testified that he only threw the beer bottle as a distraction when he saw Defendant pull out the gun. Other pertinent facts are provided below as needed to address Defendant's arguments.

**DISCUSSION**

**I.    Defendant's Convictions for Aggravated Assault With a Deadly Weapon and Shooting From a Motor Vehicle Do Not Violate the Prohibition Against Double Jeopardy**

{5}    Defendant argues that his convictions for aggravated assault with a deadly weapon and shooting from a motor vehicle violate his right to be free from double jeopardy. We review double jeopardy challenges de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. Double jeopardy challenges involving multiple punishments for violations of the same statute are unit of prosecution cases, while cases in which the same conduct results in convictions under different statutes are double description cases. *Id.* This is a double description case, because Defendant is challenging his convictions under two different statutes.

{6}    To determine whether a double jeopardy violation has occurred in a double description case, we first ask "whether the conduct underlying the offenses [was] unitary, i.e., whether the same conduct violate[d] both statutes." *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223 (emphasis omitted). The parties

4

here agree that the conduct forming the basis for both convictions was unitary; we agree.

**{7}** After determining that conduct is unitary, this Court must determine whether the Legislature intended to allow multiple punishments for that conduct. *See State v. Montoya*, 2013-NMSC-020, ¶ 29, 306 P.3d 426. This prong of the analysis is simple because our Supreme Court has already held that convictions for shooting at or from a motor vehicle and aggravated assault with a deadly weapon that arise out of unitary conduct do not violate a defendant's double jeopardy rights. *State v. Sosa*, 1997-NMSC-032, ¶¶ 34-40, 123 N.M. 564, 943 P.2d 1017. We are bound by our Supreme Court's decision. *See Baca v. State*, 2017-NMCA-076, ¶ 18, 404 P.3d 789

**{8}** Defendant nevertheless argues that *Sosa* has been undermined by our Supreme Court's later decision in *Montoya*, which "made it clear" that shooting at or from a motor vehicle addresses the same social evil as aggravated assault, and therefore, a defendant may not be punished for both offenses. Defendant further notes that *Sosa* pre-dated the "modified *Blockburger*" test that is now used for double description analysis. While we recognize that our Supreme Court has continued to develop the law of double jeopardy since *Sosa* was decided in 1997, *Montoya* did not expressly overrule *Sosa*, and this Court is therefore bound to apply it. *Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (holding that even if

the Court of Appeals believes that the Supreme Court would overrule its own precedent if given the opportunity, the Court of Appeals is still bound to apply it). Thus, we leave it to our Supreme Court to overrule its decision in *Sosa* if that is the appropriate course.

## II.      The Firearm Enhancement of Defendant's Sentence for Aggravated Assault Does Not Violate Double Jeopardy

**{9}**      Defendant next argues that applying the firearm enhancement to his sentence violated double jeopardy because both the enhancement and his conviction for aggravated assault were based on the use of a firearm. Our Supreme Court recently addressed this issue in *State v. Baroz*, 2017-NMSC-030, ¶ 20, 404 P.3d 769, and held that applying the firearm enhancement to a sentence for aggravated assault with a deadly weapon does not violate the prohibition against double jeopardy. *See State v. Branch*, \_\_\_-NMCA-\_\_\_, ¶¶ 1-2, \_\_\_ P.3d \_\_\_ (No. A-1-CA-33064, Jan. 23, 2018) (recognizing our Supreme Court's decision in *Baroz*, and withdrawing a previous opinion that held that sentence enhancement for use of a firearm in the commission of aggravated assault violates double jeopardy). *Baroz* is controlling and we therefore reject Defendant's claim.

## III.      The District Court Did Not Abuse Its Discretion by Excluding the Name of Victim's Prior Felony Conviction

**{10}**      Defendant argues that the district court abused its discretion by denying

6

Defendant "the opportunity to name and discuss [Victim's] prior felony conviction for aggravated assault with a deadly weapon." We review evidentiary matters for an abuse of discretion. *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "If there are reasons both for and against a court's decision, there is no abuse of discretion." *State v. Smith*, 2016-NMSC-007, ¶ 27, 367 P.3d 420.

{11} Victim was convicted of aggravated assault with a deadly weapon in 2007. Before trial, Defendant moved to reconsider an earlier ruling in which the district court had ruled that the name of Victim's crime was inadmissible. Defendant sought to introduce the name of Victim's crime to support his self-defense claim. The State objected, arguing that the evidence was barred by Rule 11-404(B) NMRA and was unfairly prejudicial. The district court, relying on *State v. Maples*, 2013-NMCA-052, ¶ 18, 300 P.3d 749, ruled that under Rule 11-405(B) NMRA, Defendant could testify about the conviction as a specific instance of Victim's violent conduct to establish Defendant's reasonable fear of Victim if Defendant had knowledge of the conviction. Defendant then testified on voir dire outside the presence of the jury that at the time of the shooting, he did not know the name of the crime that Victim had committed, did

not know the facts of that crime, and did not know how much time in jail Victim had served, if any. Defendant did say that when he met Victim for the first time, Victim told him that he had "served eighteen months in prison for beating the shit out of some guy . . . with a tool of some sort."

{12}     After Defendant testified on voir dire, the district court ruled as follows:

> His knowledge of a conviction is distinguishable from him having knowledge of the past violent act. [Defendant] didn't know who the victims were and he didn't know what weapon was used—his testimony conflicted. . . . I'm not going to allow reference to the specific conviction. Absolutely the fact that he was convicted of a felony, comes in under [Rule] 11-609 [NMRA]. I will, however, because I do not want to deny [Defendant] an opportunity to develop his defense of self-defense—and is that accurate? . . . There were two other incidences? [Defense counsel confirmed this was correct.] Okay, so that will allow him to develop his self-defense if he wishes to testify as to that, additionally, . . . certainly you can ask [Victim] if he testifies, "didn't you threaten to beat him up like you beat someone else up?" You know, you can inquire into that, but you can't inquire as to, serving eighteen months in prison for anything . . . or go into the specific conviction. That is my ruling and I believe that that's supported by everything that I already read into the record.

The court also ruled that evidence about the specific facts of Victim's offense was not admissible as proof of a common scheme under Rule 11-404(B)

{13}     At trial, while cross-examining Victim before the jury, Defendant asked Victim if he told Defendant that he had "beaten the crap out of a dude with a wrench or a tool and had done eighteen months inside," despite the court's order not to mention the length of the sentence. Victim stated that he did not recall having such a conversation.

Defendant later testified in his own defense, and said that he felt intimidated by Victim because of a conversation they had the first time they met, but he did not tell the jury what Victim had said to him.

{14}	Defendant now argues that the name of Victim's crime was admissible for impeachment purposes under Rule 11-609, and that it was central to his self-defense claim, because it contributed to Defendant's fear of Victim on the date of the shooting. Although the fact of a prior conviction may be admitted for impeachment purposes under Rule 11-609, it is subject to the balancing test required by Rule 11-403 NMRA. *See* Rule 11-609(A)(1)(a) (providing that evidence of a crime punishable by death or more than one year of imprisonment used to attack a witness's character for truthfulness "must be admitted, subject to Rule 11-403 . . . , in a civil case or in a criminal case in which the witness is not a defendant"). Rule 11-403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" As we explained in *State v. Lucero*, 1982-NMCA-102, ¶ 12, 98 N.M. 311, 648 P.2d 350,

> [s]ome of the factors which should be considered by the trial court when deciding whether to admit evidence of prior convictions not involving dishonesty, for impeachment purposes, include (1) the nature of the crime in relation to its impeachment value as well as its inflammatory impact; (2) the date of the prior conviction and witness's subsequent history; (3) similarities, and the effect thereof, between the past crime and the crime charged; (4) a correlation of standards expressed in Rule [11-609(A)] with the policies reflected in Rule [11-]404 . . . ; (5) the

9

importance of the [witness's] testimony[;] and (6) the centrality of the credibility issue.

{15} For convictions less than ten years old where the crime was punishable by death or imprisonment for more than one year, Rule 11-609(A)(1)(a) provides that when "attacking a witness's character for truthfulness by evidence of a criminal conviction[,] . . . [such evidence] must be admitted, subject to Rule 11-403 . . . , in a civil case or in a criminal case in which the witness is not a defendant[.]" The *name* of the crime, however, does not have to be admitted in all cases. *See State v. Samora*, 2016-NMSC-031, ¶ 45, 387 P.3d 230 (confirming that district court properly excluded names of victim's prior felonies while still allowing the defendant to refer to the existence of those convictions); *see also State v. Trejo*, 1991-NMCA-143, ¶ 14, 113 N.M. 342, 825 P.2d 1252 (noting that the defendant could have mitigated unfair prejudice caused by evidence of prior convictions by requesting that the jury not be told the names of the crimes).

{16} Evidence of specific instances of a victim's prior violent conduct may be admissible to show the defendant's reasonable fear of the victim when presenting a self-defense claim, because fear of the victim is an essential element of the defense. *See* Rule 11-405(B) ("When a person's character . . . is an essential element of a charge, claim, or defense, the character . . . may also be proved by relevant specific instances of conduct."); *Maples*, 2013-NMCA-052, ¶ 18 (stating that specific instances

10

of the victim's violent conduct are admissible to show the defendant's subjective fear of the victim); *State v. Armendariz*, 2006-NMSC-036, ¶ 17, 140 N.M. 182, 141 P.3d 526 (holding that fear of the victim is an essential element of a self-defense claim), *overruled on other grounds by Swick*, 2012-NMSC-018, ¶ 31. Such evidence, however, may only be admitted when the defendant can "establish that he or she had knowledge of the victim's past violent acts at the time of the incident." *Maples*, 2013-NMCA-052, ¶ 18. "Otherwise, the evidence would not be relevant to the defendant's subjective state of mind during the encounter and his or her belief in the necessity of self defense." *Id.* (citing *State v. Baca*, 1992-NMSC-055, ¶ 7, 114 N.M. 668, 845 P.2d 762).

**{17}** In this case, Victim's crime was punishable by imprisonment for more than one year, so testimony about the *fact* of that conviction was properly admitted to impeach Victim's character for truthfulness. *See* Rule 11-609(A)(1); *Trejo*, 1991-NMCA-143, ¶ 10 ("[E]ven if the alleged crime did not involve dishonesty, there is proven dishonesty when the defendant goes to trial, denies the offense, and then is convicted."). As for the name of Victim's crime, the district court considered the prejudicial impact to the State of naming the crime, weighed the fact that it was nine years old and did not involve Defendant, and balanced that against Defendant's self-defense claim. The court ultimately determined that excluding the name of the crime

would not prevent Defendant from developing his self-defense claim and ruled that Defendant could ask Victim if he told Defendant about a crime he had committed. The district court thus considered all of the relevant factors identified in *Lucero* and determined that the prejudicial impact to the State of naming Victim's crime outweighed its probative value. *See Lucero*, 1982-NMCA-102, ¶ 12.

{18} The district court also properly determined that the crime's name was irrelevant to Defendant's self-defense claim because Defendant did not know what it was at the time of the shooting, and thus it could not have contributed to his claimed fear of Victim. *See Maples*, 2013-NMCA-052, ¶ 18. The district court properly allowed Defendant to explore the threatening statement Victim supposedly made about his crime as a basis for Defendant's fear of Victim, though Victim testified that he could not recall making that statement.

{19} The district court's exclusion of the name of Victim's crime did not prevent Defendant from fully developing his self-defense claim. Defendant introduced ample evidence to support his claim that he was afraid of Victim, including his testimony that he was intimidated by Victim after meeting him the first time; his testimony that he was afraid of Victim due to multiple encounters with him, including his claim that Victim started a fist fight by "rushing" him on a previous occasion; and his testimony that Victim previously brandished a rifle while screaming at him. Defendant also

testified that on the date of the shooting, Victim was the aggressor because he sprinted toward Defendant's vehicle with a bat and threw a beer bottle at his vehicle.

{20} Defendant also appears to argue that he was not allowed to testify that Victim had told him about beating up another man with a tool because the district court admonished defense counsel during Victim's cross-examination not to question any other witness, including Defendant, about the prior conviction. The district court did not "admonish" defense counsel not to question any other witnesses about the statement Victim allegedly made to Defendant, but rather cautioned defense counsel not to discuss Victim's claimed eighteen-month sentence with any other witnesses, since doing so expressly violated the court's order. We do not interpret the court's order as prohibiting Defendant from testifying about what Victim told him because the court did not specifically prohibit it. Moreover, the district court stated earlier that it did not intend to limit Defendant from developing his self-defense claim. If Defendant was confused about whether the district court's order precluded him from testifying about what Victim allegedly said to him when they first met, Defendant should have asked for clarification.

{21} We conclude that the district court's ruling was not "clearly against the logic and effect of the facts and circumstances of the case[ or] . . . clearly untenable or not justified by reason." *See Smith*, 2016-NMSC-007, ¶ 27 (internal quotation marks and

13

citations omitted).

**IV.    The District Court Did Not Abuse Its Discretion by Allowing Victim's Neighbor to Testify**

{22}    Defendant argues that the district court abused its discretion by allowing the State to call Victim's neighbor, Christine Santos, to testify about an incident that occurred one week before the shooting in which Defendant rode in a vehicle driven by his friend, Justin Ledbetter, who then drove quickly through Ms. Santos' circular driveway while playing loud music and nearly hitting her truck. Defendant argues that the evidence was cumulative and unfairly prejudicial. We reject Defendant's claim.

{23}    Before trial, Defendant objected to Ms. Santos' testimony, arguing that it would be irrelevant and unfairly prejudicial. The State argued that her testimony was relevant to rebut Defendant's claim that he was afraid of Victim, because if he were truly afraid he would have likely avoided Victim's neighborhood. The district court allowed Ms. Santos to testify about her encounter with Defendant and Mr. Ledbetter as part of the State's rebuttal, but prohibited her from saying that Mr. Ledbetter's driving was "reckless" or "careless" or testifying that she called the police.

{24}    At trial, Ms. Santos testified that she had seen Defendant one week before the shooting: he was riding in Mr. Ledbetter's car as Mr. Ledbetter drove rapidly down her street and into her driveway, while playing loud music, and almost hitting her truck. Ms. Santos further testified that Defendant was not driving, that he did not say

14

anything or make any gestures, and that he was not in control of the vehicle.

**{25}** "We review the admission of the questioned testimony under an abuse of discretion standard to see whether the probative value of the evidence was outweighed by any prejudicial effect." *State v. McDonald*, 1998-NMSC-034, ¶ 14, 126 N.M. 44, 966 P.2d 752. Relevant evidence is that which has "any tendency to make a fact more or less probable than it would be without the evidence" so long as "the fact is of consequence in determining the action." Rule 11-401.

**{26}** We conclude that this evidence was properly admitted to help rebut Defendant's claim that he feared Victim. Though this evidence is not particularly strong because Defendant was not the driver, it does meet the minimum standard of relevance of having "any tendency" to make Defendant's fear of Victim less probable. It showed that Defendant was in the area where Victim lived, while a person who was truly afraid of Victim would likely have avoided the area. *See* Rule 11-401. The district court addressed the danger of unfair prejudice by prohibiting Ms. Santos from labeling Mr. Ledbetter's driving as reckless, careless, or from testifying that she called the police. Additionally, Ms. Santos testified that Defendant was not driving the car, and thus the jury was able to consider whether the evidence truly undermined his self-defense claim.

**{27}** Defendant argues that the evidence was cumulative, serving only to bolster

15

Victim's allegations of harassment. We hold that the evidence was not cumulative simply because other evidence was introduced that Defendant repeatedly drove slowly near Victim's house while playing loud music. Defendant testified that he has friends in the area and is often in the neighborhood visiting them. Ms. Santos' testimony showed that Defendant was not only in the neighborhood, but practically across the street from Victim's house, which was not on a through street.

**{28}** Because there were reasons both for and against the district court's decision and the decision was not clearly against the logic and effect of the facts and circumstances of the case, clearly untenable, or unjustified by reason, the district court did not abuse its discretion by allowing Ms. Santos' testimony. *See Smith*, 2016-NMSC-007, ¶ 27.

**V.      The District Court Did Not Abuse Its Discretion by Refusing to Grant a Mistrial Due to a Juror's Acquaintance With a Witness**

**{29}** Defendant's final claim is that the district court abused its discretion by not granting a mistrial when it was made aware, during jury deliberations and after the alternates had been excused, that one of the jurors knew Ms. Santos personally. The matter was brought to the court's attention five minutes into jury deliberations when the juror sent out a note that stated "I know Chrissy Leyva. She is a family friend."

**{30}** The district court questioned the juror and learned that "Leyva" was Ms. Santos' childhood surname. The court questioned the juror about the extent of her relationship with Ms. Santos, and whether she could still be fair and impartial and not

16

give Ms. Santos' testimony any undue weight. The juror said that she knew Ms. Santos from childhood, had not seen Ms. Santos for eight or nine months, does not see her often, and that she could be fair and impartial and would consider all of the evidence. Defense counsel then questioned the juror about whether her service on the jury would make any future encounters with Ms. Santos uncomfortable. The juror responded that it would not make her feel embarrassed or concerned to see Ms. Santos after the trial ended, but that she would feel uncomfortable discussing the case with Ms. Santos.

{31} Defense counsel then moved for a mistrial, relying on the juror's statement that she would feel uncomfortable talking about the matter with Ms. Santos after the trial was over, and arguing that the juror might therefore be more likely to credit Ms. Santos' testimony. The district court denied the motion.

{32} Defendant now argues that because the district court did not ask the juror whether she had discussed her relationship or opinion of Ms. Santos with fellow jurors and did not ask her why she did not speak up as soon as she saw her friend on the witness stand, the district court failed to adequately determine whether the entire jury was prejudiced. We note that Defendant was given the opportunity to ask these questions of the juror himself but did not do so.

{33} "We review a trial court's denial of a motion for mistrial under an abuse of

17

discretion standard." *State v. Gardner*, 2003-NMCA-107, ¶ 3, 134 N.M. 294, 76 P.3d 47 (internal quotation marks and citation omitted). Where "the underlying issue involves a deadlocked jury or possible jury bias, the trial judge should be allowed broad discretion whether to declare a mistrial." *State v. Saavedra*, 1988-NMSC-100, ¶ 9, 108 N.M. 38, 766 P.2d 298.

{34} In this case, there is no evidence that the juror disregarded the district court's instruction not to inform other jurors that she knew Ms. Santos, and we presume that jurors follow instructions provided by the court. *See Gardner*, 2003-NMCA-107, ¶¶ 10, 12. Thus, Defendant's claim that other jurors might have been biased by the juror's relationship with Ms. Santos is unfounded. If Defendant was concerned that the jury had already been made aware of the juror's relationship with Ms. Santos, he should have asked the juror if she had already told the rest of the jury that she knew Ms. Santos. *See State v. Sanchez*, 1995-NMSC-053, ¶ 11, 120 N.M. 247, 901 P.2d 178 ("We believe that by failing to question the juror during voir dire, [the a]ppellants waived any objection to the juror's participation in the trial."). Without making such an inquiry, Defendant's concerns are speculative and unproven. *Gardner*, 2003-NMCA-107, ¶ 12 (declining to find that the district court abused its discretion by not declaring a mistrial when the alleged juror bias was speculative in nature).

{35} The district court was convinced after voir dire that the juror could still be fair

18

and impartial. This was not an abuse of the district court's broad discretion, because the court assessed the juror's potential bias and was satisfied that the juror could still be fair and impartial. *See Saavedra*, 1988-NMSC-100, ¶ 9 (noting that a district court has broad discretion in matters involving juror bias).

**CONCLUSION**

{36}     For the reasons set forth above, we affirm the district court's judgment and sentence.

{37}     **IT IS SO ORDERED.**


_____
**EMIL J. KIEHNE, Judge**

**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**HENRY M. BOHNHOFF, Judge**